JOEL PERRY v THE CITY OF BIG RAPIDS.

*Taxation—Abstract books—" Cash value" defined.*

1. Abstract books referring to land titles have no *intrinsic* value, and are not taxable.    *Dart v. Woodhouse*, 40 Mich. 399.

2. The constitutional provision requiring assessments to be made on property at its cash value means not only what may be put to valuable uses, but what has a recognizable pecuniary ·value *inherent in itself*, and·not enhanced or diminished according to the person who owns or uses it.

Error to Mecosta.    (Fuller, J.)    Argued January 27 and 28, 1887.    Decided October 13, 1887.

Assumpsit.    Plaintiff brings error.    Reversed.    The facts are stated in the opinion.

*M. Brown*, for appellant.

*Austin Herrick* (*Frank Dumon*, of counsel), for defendant.

CAMPBELL, C. J.    Plaintiff sued to recover taxes paid under protest, for which the tax collector was proceeding to collection under his warrant.

The taxes were levied in 1885. The supervisor had assessed plaintiff for $300 upon the contents of his office, to which plaintiff did not object. When the board of review met, that body, of its own motion, and without testimony, raised the assessment to $1,800, doing so upon the claim that certain abstract books referring to land titles in Mecosta county should be taxed at that rate. After raising the assessment, plaintiff was notified of it, and appeared by counsel to object to it, but the board refused to change the enlarged rate.

While some question may exist as 'to the validity of this action in the manner in which it was had, we do not propose to discuss that, inasmuch as the subject-matter which they proposed to assess in that way was not subject to their jurisdiction.

The Constitution requires assessments to be made on property at its cash value. This means not only what may be put to valuable uses, but what has a recognizable pecuniary value inherent in itself, and not enhanced or diminished according to the person who owns or uses it. The court below found expressly, and could not have found otherwise, that these abstract books have no intrinsic value. They are only valuable for the information they contain, and that information is conveyed by consultation or extracts. Their value is only kept up by their completeness and continued correction. The sale of a complete copy would practically destroy the value of the books in the hands of the plaintiff. So a similar compilation by any one else would have a like result. The value of the books, except as used, is nothing. They resemble in nature, if not precisely, the books which are consulted by any person who makes an income from his acquired knowledge, whether scientific or otherwise; as a surveyor's notes, an author's *memoranda,* a druggist's recipes, and many analogous things. They may be and are

very serviceable, but they are not things that the law has made subject to seizure or assessment.   If these books were taxable as personalty, they could be made liable to satisfy it, and this, in our opinion, cannot be done.

As the whole subject was discussed and disposed of in *Dart v. Woodhouse,* 40 Mich. 399, it does not seem necessary to rehearse or review what was there held.   All civilized governments respect private manuscripts, and treat them as not partaking of the nature of property open to ordinary sale and disposal.   The possession of them gives no right in the possessor to use them, or publish them, unless by the acquiescence of the originator.   While it often has happened that trade secrets, and other information which has been noted down in writing, may furnish means of acquiring profit, it was never imagined or held that the writings themselves were subject to seizure and sale without consent.   Any attempt to make value out of such a sale would be really a sale of knowledge, and not of property.

Whether the tax laws do or do not include things resembling these books in their nature we need not inquire, although none such have been pointed out.   If they do, it is probably through inadvertence.   It is very clear to us that this property does not come within the constitutional description, and we have found no intimation that the statutes meant to include it.

Whether plaintiff's business itself can be taxed is not involved here.   This is not a tax on business directly, although it is evidently measured by business, which is not the legal test.

We think the tax was invalid, and judgment must be rendered for the plaintiff for the amount paid, with interest, and costs of both courts, reversing the judgment below.

SHERWOOD and CHAMPLIN, JJ., concurred.

MORSE, J. (*dissenting*).   In this case the plaintiff kept

and owned a set of manuscript abstract books, containing an abstract of the title to lands in Mecosta county, which he kept in his office. He also kept in the office an iron safe, some office furniture, etc., which he used in connection with his business. His occupation consisted in part of furnishing abstracts of title to land in Mecosta county, to such persons as sought to employ him.

The court found, among other things, as follows:

"That said abstracts of title were written in a set of books, twelve in number; that said books were ruled, had proper printed headings, but were otherwise blank, until said abstracts of title to said land were written therein; that the original cost of said books was $25 dollars each.

"That said abstracts of title were made by one James M. Colby, and were purchased by said plaintiff from said Colby for the sum of twenty-nine hundred dollars; that said plaintiff had kept said abstracts written up, by copying therein instruments affecting titles to land which were recorded in the office of the register of deeds for said county of Mecosta; that said abstract books, to be of any value, had to be kept written up, and, except for the purpose of furnishing abstracts of title therefrom, they were of no value.

"That in the year 1883 the plaintiff was assessed for said abstract books at a valuation which was fixed by the supervisor at $300, and raised by the board of review to $1,500, and taxes spread upon said valuation of $1,500, which were paid by said plaintiff under protest; and in the year 1884 said plaintiff was assessed for abstract books at a valuation of $300, and paid without protest the tax assessed upon such valuation.

"That, in the month of April in the year 1885, the supervisor of the First ward of the city of Big Rapids, made the following assessment against the plaintiff: ' Joel Perry, personal, value as assessed, $300 ;' that, after said supervisor had made such assessment, he saw the plaintiff upon the streets of the city of Big Rapids; that the plaintiff asked the supervisor what he had assessed him in the First ward; that the supervisor said $300; that the plaintiff then said he thought that was about right,—that he had in his office a safe, and some office furniture, but that he did not consider his abstract books worth very much."

The main issue to be determined is the liability to taxation of these abstract books. I think they are subject to taxation the same as other personal property. They cannot be considered as scientific discoveries, nor is there any particular genius exercised in their creation. They are not like the manuscripts of an author, the recipes of a druggist, or a copyright. The work of compiling these abstracts is a mere mechanical one, involving no independent creation of the mind of the transcriber. It is not in any sense the work of genius, or the development of new thoughts or ideas. They are no more the creation or creature of the mind than is the iron or wood work of the skilled mechanic, nor are they so much so. Any competent penman, with ordinary intelligence, can go into the record office in Mecosta county, and create, by copying and transcribing, an abstract book of title; but the ordinary mechanic cannot do the work of the skilled one. When the iron is moulded, or the wood carved, into useful and ornamental articles, such articles become property, and taxable in the hands of the original worker or others; and no sound reason can exist why these abstracts should not also be considered property, and bear their proportion of the public burdens. These abstracts have also a cash value, and pass from hand to hand, and are bartered and sold like other property. The plaintiff did not make these abstracts, but purchased them from the maker, as the lawyer purchases his office furniture from the skilled maker and mechanic. He must, it is true, keep on copying, to keep them up, but they are as valuable in the hands of another, who may desire to purchase and use them, as they are in his. They brought $2,900 in this very case when sold by the maker to the plaintiff. Can it be said that these books in the hands of the plaintiff are purely incorporeal, with no tangibility that the tax-gather can reach? Can it be held that the right to use these books belongs to Perry alone, and that not even the

State can interfere to collect its necessary revenues,—that the last cow of the widow may be taken, but these books, worth thousands of dollars, and upon which alone a business is predicated and sustained, cannot be reached because of the natural state and inherent quality of the plaintiff's right therein? His interest in them is protected by no copyright, and by no statute law, and I fail to see what natural obstacle there is in the way of their being considered property, and taxable property at that. The right to levy taxation to meet the necessary and legitimate needs of the government is almost unlimited as to property. The Constitution evidently intends that the exemptions shall be few, and that the assessments shall be uniform. If these books are property, they ought to be subject to taxation. It cannot be disputed from this record but that they have been both used and sold as property, and have a large money value. The Legislature has provided that " all goods and chattels within the State " shall be taxable unless exempted, and has not exempted property of this kind.

I find no error in the action of the court below. The judgment should be affirmed.