Leon Loan and Abstract Company, Appellant, v. Equalization Board of Leon, Iowa, *et al.*; Appellees.

Taxation: ABSTRACT BOOKS AS TAXABLE PROPERTY. Under the provisions of section 801 of the code making all property, whether real or personal, subject to taxation, except such as is therein expressly made exempt, a set of books containing written abstracts of the titles to real estate in a county, as taken from the county records, which are capable of being used by persons of ordinary intelligence as a means of profit, and which have a market value, are not exempt from taxation because of their manuscript character.

*Appeal from Decatur District Court.*—Hon. R. C. Henry, Judge.

Thursday, October 6, 1892.

This is an agreed case, submitted upon the following statement of facts, with certain omissions which are deemed unimportant in its consideration:

"*First.* That the plaintiff is a copartnership composed of D. and A. B. Stearns and L. P. Sigler and Francis Varga, and doing business under the firm name of the 'Leon Loan & Abstract Company.' *Second.* That the plaintiffs are the owners of a set of books containing the only full abstracts and records of the titles of lands and lots in Decatur county, Iowa,

prior to April 1, 1874. That the abstract books, of themselves, without any writing in them, are of about the value of one hundred and fifty dollars. *Third.* That the abstract books were first made by J. W. Harvey and J. L. Young, who donated them to Albert Hale and C. B. Jordan. That Jordan bought the interest of Hale, and paid a reasonable compensation therefor. That some time afterwards one W. H. Robb bought an interest in said books of C. B. Jordan, and paid a reasonable compensation therefor. That said abstract books were again sold by W. H. Robb and C. B. Jordan, or by C. B. Jordan, to one Gibbon, for which a reasonable compensation was at the time paid. That on the ———— day of ———— the said Gibbon sold said abstract books to D. & A. B. Stearns and L. P. Sigler for the sum of six thousand dollars. *Fourth.* That on or about the first day of April, 1874, the recorder's office in Decatur county, Iowa, and the contents thereof (the records showing the titles to lands and lots) were entirely destroyed by fire. That the abstract books of the plaintiff are the only full records showing titles to lands and town lots in Decatur county, Iowa, prior to April 1, 1874. That in addition thereto the said abstract books at this time show full and complete records of the title to all lands and town lots in Decatur county, Iowa, and all liens upon the said lands and lots. *Fifth.* That the value of abstracts to the party procuring them depends much on the ability, competency and responsibility of the abstractor and the firm. *Sixth.* It is agreed that the Leon Loan & Abstract Company received during the year 1888, for making abstracts from said books and the existing records of Decatur county, Iowa, the sum of five hundred and thirty-nine dollars and forty-nine cents. *Seventh.* It is further agreed that the services of a competent abstractor to keep up said books daily, and to issue abstracts therefrom, are worth at least fifty dollars.

per month, if he connects no other business with said work.  *Eighth*. It is further agreed that a suitable office, with fixtures and a fire-proof vault, to keep said books in, is reasonably worth one hundred dollars a year, and the abstract blanks and stationery necessary to carry on said business is about fifty dollars a year. *Tenth*. That the value of said abstract books consists: (1) In the value of the books themselves.   (2) In the fact that they contain the only record of titles of lands and lots in Decatur county, Iowa, prior to April 1, 1874.   (3) That they contain a true, full and complete record of the title of each tract of land and town lot in Decatur county, Iowa, up to this date. (4) That they have an actual market value, and can be used by anyone of ordinary intelligence and ability in learning the title to lands in Decatur county, Iowa.   (5) That by owning said books the plaintiff herein is enabled to furnish abstracts to lands and lots to different parties and charge each party a very reasonable compensation for the same.  *Eleventh*. That any person owning said books and possessed of ordinary intelligence, education and ability, could use them as they are now used by the plaintiff.  *Twelfth*. That the said abstract books are accepted as the best evidence of title to lands and town lots in Decatur county by our courts.  *Thirteenth*. That the said abstract books were assessed for taxation for the year 1889 at the sum of one thousand, seven hundred dollars. *Fourteenth*. That Francis Varga is secretary for the plaintiff herein and has one thousand, five hundred dollars invested in said abstract books, and receives as interest on his one thousand, five hundred dollars and for his compensation for his labor in keeping said books up daily, and furnishing abstracts therefrom for parties desiring to know the title to lands and lots in Decatur county, Iowa, one-half of the net proceeds of the business of making said abstracts.   That the other plaintiffs, D. and A.

B. Stearns and L. P. Sigler, receive for the use of said books the other half of the net proceeds of the said business; and said abstract books are of the value of six thousand dollars. *Fifteenth*. That Francis Varga has an office in the Farmers' & Traders' bank building in Leon, Decatur county, Iowa, in which said books are kept and furnished by said bank with suitable furniture and fixtures for the preservation of the said books, and for the transaction of the business of making abstracts to titles of lands and lots in Decatur county, Iowa. *Sixteenth*. It is agreed in this case that the court shall decide, first, as to whether the said abstract books are assessable or taxable property, and, if so, to what extent they are assessable and taxable." The district court found "that the abstract books in question are assessable and taxable as property, and should be assessed and taxed as other taxable property;" and gave judgment for the defendant for costs. The plaintiff appealed.—*Affirmed*.

*Harvey & Parrish*, for appellant.

These abstract books are the private manuscripts of the parties owning the books. A manuscript is defined to be a "paper or book written with the hand as distinguished from a printed document or book." Webster's Unabridged Dictionary; Bouvier's Law Dictionary. Being manuscripts, the law which applies to manuscripts would apply to these abstract books. The taxability of abstract books does not depend on their value, but upon the question whether property of that character is taxable at all. There is no principle better settled than that courts will protect the author or proprietor of a manuscript, whether it be in the form of a book, memoranda or letter, and will enjoin other persons from making use of these manuscripts without the permission of the owner or author. 2 Story's Equity Jurisprudence, sections 942–944; Eaton on Injunction,

342; Revised Statutes of the United States, section 4967. No law can compel a man to publish what he does not choose to publish, and the possession of a manuscript gives no right whatever to the publication thereof without the consent of the author. Freeman on executions, section 110; *Stevens v. Gladding*, 17 Howard, 451; *Stephens v. Cady*, 14 Howard, 53. For this reason it has been held that a set of manuscript abstract books could not be sold under execution on the ground that the right of the proprietor of such manuscript to publish it or keep it from publication is not only a property right, but one which is purely incorporeal, and attended with considerations of a nature entirely different from any involved in other rights. *Dart v. Woodhouse*, 40 Michigan, 399. If a manuscript could be levied upon and sold on execution, the purchaser at execution sale would become the proprietor of it and have a right to publish its contents, and thereby a man would be compelled to publish what he did not choose to publish. An attempt to make value out of such a sale would be really a sale of knowledge, and not property. As these books cannot be levied upon by execution, neither can they be levied upon to satisfy a tax by distress warrant. It would be an absurdity to say that an article could be taxed, and that no levy could be made on the article to satisfy the tax. *Perry v. City of Big Rapids*, 34 N. W. Rep. 530. The abstract books are private manuscripts because they belong to private individuals, as distinguished from a public manuscript which would be a public document or record. It is likely that a manuscript would lose its private character as far as its holders are concerned, upon its publication. 25 Meyers' Federal Decisions, 933; *Bartlett v. Crittenden*, 5 McLean, 32, 43; *Bouccicault v. Fox*, 5 Blatchford, 87, 102. It has often been decided that the sale of a private manuscript did not amount to a publication. *Crowe v. Aiken*, 2 Bissell, 208–215; 25 Meyers' Federal

Decisions, 971; *Roberts v. Meyers*, 23 Law Rep., 728; *Folsom v. Marsh*, 2 Story, 100. The rights of the plaintiff are the same that those of the original compiler of the books would have been had he retained the ownership. Meyers' Federal Decisions, p. 1016. It has been held that a single sheet of paper may be a manuscript and a subject of copyright, also a chart and a letter, no matter how brief or lacking in literary merit, and also a compilation of facts or statistics drawn from original sources; precisely what these abstract books are; also notes to an existing work, compiled from various sources, though not new. 25 Meyers' Fed. Dec., 978, 982 and 995; *Bullinger v. McKey*, 15 Blatchford, 550–562; *Gray v. Russell*, 1 Story, 11, 21. Certainly these decisions make it clear that the fact that the production of these abstract books did not require the exercise of a high order of creative genius does not deprive them of their character as manuscripts.

*C. W. Hoffman*, for appellee.

"No property is beyond the reach of the taxing power of the state unless put beyond it distinctively and without qualification." 1 Desty on Taxation, 52. The agreed statement of facts in this case shows that the abstract books in question are articles of merchandise; that they have been bought and sold upon the market many different times, and are not a private manuscript under the law. See Bouvier's Law Dictionary. There is no law in Iowa exempting private manuscripts which are valuable, from taxation. In fact they are included in the general terms "and all other property, real or personal, are subject to taxation." These abstract books have become an article of commerce. They are neither the new or novel production of some inventive genius; nor a scientific or literary production of some author. Confessedly they are

property, and as such may be valuable to their compiler or owner, and he may voluntarily transfer his interest to another, and the transfer will not impair the skill required in their completion. In a state where the statutes declare all property subject to execution we can conceive of no reason for holding abstract books not subject to execution. Freeman on Execution, 110. Taxes are enforced contributions, levied by the authority of the state for the support of the government, and for all public needs. These abstract books have an actual *situs* in Leon, Iowa, and only apply to lands in Decatur county, and can and should be reached for taxation or execution the same as any other property.

Granger, J.—The legal question involved is important. The books are admitted to have "an actual market value," and, for the purpose of "learning title to lands in Decatur county," they "can be used by anyone of ordinary intelligence and ability." It is also admitted "that they contain a true, full, and complete record of the title of each tract of land and town lot in Decatur county, Iowa." The books have an admitted value of six thousand dollars; have changed hands as articles of commerce; are kept in an office building as the basis of a business for profit by the receipt of fees for transcripts of their contents; and their value consists chiefly in their being correct compilations from public records, and not because their contents are emanations from the learning or genius of an individual.

The revenue law of the state makes certain exemptions of property from taxation, but there is no claim that they embrace books of this character. By section 801 of the Code it is provided that "all other property, real and personal, is subject to taxation in the manner directed." These books are personal property. They embody the qualities of such property in a marked degree. Then, why are they not taxable? This brings

us to the grounds urged by the appellant against such taxation. It is said: "These books being manuscripts, the law which applies to manuscripts would apply to these abstract books." Again, it is said that they "answer the definition of 'manuscript,' being books written with the hand." We must not be understood as committing ourselves to any view of the law relative to the liability of authors' manuscripts being taxable under our statutory provisions. For the purposes of the case we may say they are not.

The appellant cites, and relies largely for support in its position upon, the holding of the supreme court of Michigan in the case of *Perry v. City of Big Rapids*, 34 N. W. Rep. 530. The decision is by a divided court, and we regret that we find ourselves opposed to the reasoning and conclusions of the majority opinion. Mr. Justice Morse, in a dissenting opinion, reflects what, in our judgment, is the true spirit of the law. The majority opinion takes, to some extent, for its support, the holding in the case of *Dart v. Woodhouse*, 40 Mich. 399, in which that court held that "an execution levy made on a set of manuscript abstract books was of no validity, because the right of the proprietor of such a manuscript to publish it or to keep it back from publication is not a property right, but one which is purely incorporeal, and attended with considerations of a nature entirely different from any involved in other rights." The fact that the Dart case has such controlling force in *Perry v. City of Big Rapids* leads us to believe the facts of the two cases were substantially alike, as to the character of the abstract books, although the reported cases might leave some doubt in that respect.

The Michigan cases attach great importance to the fact that the proprietor of a manuscript may control or determine whether or not it shall be published, and that, without publication, there is no value as a basis

for an assessment or levy. We are unable to understand the application of the thought to the case at bar. In cases of manuscript, designed for publication, their value, in a general property sense, may be said to be in the published work or the right of publication, for it is then only that it becomes of interest to others than the author. It is when the manuscript is, by the author, put in condition for use, that it takes to itself value in a commercial sense. Before publication, or a transfer of the right of publication by the author, the manuscript is but a private memorandum or writing, without significance, except to the author, like other private memoranda. When the author places it upon the marts of the world for use or profit, a commercial value attaches, and it becomes "property," in the general sense. Before the publication, or the granting of a right to publish, the author's work is incomplete. In the light of a design to publish a work, nothing has been produced.

These abstract books answer the original design, are complete, and placed before the public for use and profit. They were not made for publication, in the general sense. Such a publication would defeat the very purpose of their production. Their value consists, chiefly, in their contents being kept from the public. They are the means, in a sense the instruments, for carrying on a business; as much so as are the tools or machinery by which the artisan plies his calling.

Mr. Freeman, in his work on Executions, section 110, referring to the Dart case, after giving the facts and conclusions, says: "The reasoning of this decision does not seem irresistible. In a set of abstract books, or in any other manuscript, we see nothing intangible—nothing which makes it difficult to subject them to execution." The rule as to patents and copyrights, as claimed by the appellant, from the cases of *Stephens v. Cady*, 14 How. 531, and *Stevens v. Gladding*, 17

How. 451, whereby they are not subject to seizure on execution because incorporeal in their nature and without existence in any particular place, is not applicable here, for the reason that these books are tangible, have a particular location, and are capable of seizure and delivery. They are more like the engraved plates referred to in the cited cases. It would, to our minds, be a strange perversion of the law to hold that these books, that are transferable from hand to hand, of the value of six thousand dollars, and usable by any person of ordinary intelligence and ability, as a means of profit, should be exempt from taxation, merely because their contents are written, and not printed, when, in either case, their use would be the same; or because "they are only valuable for the information they contain, and that information is conveyed by consultation or extracts," which thoughts seem to have been prominent in *Perry v. City of Big Rapids*. It may be said that the value of books in general depends on the information they contain, and that such information is derived from consultation; but for such abstract reasons they are no less property, subject to the operation of the revenue laws of the state.

The judgment of the district court is AFFIRMED.