ANTHONY SCHLEMAN, as Tax Collector of Hillsborough County, Florida, and J. M. LEE, as Comptroller of the State of Florida, v. GUARANTY TITLE COMPANY, a corporation organized and existing under the laws of the State of Florida.

15 So. (2nd) 754     June Term, 1943
July 6, 1943     Division A
Rehearing Granted July 29, 1943     On Rehearing November 26, 1943

*James S. Moody* and *Lewis H. Tribble,* for petitioners.

*William H. Rogers* and *Whitaker, Whitaker & Terrell,* for respondent.

PER CURIAM:

On November 13, 1942, the Guaranty Title Company, a corporation, filed in the Circuit Court of Hillsborough County, Florida, its bill of complaint against Anthony Schleman, as Tax Collector of Hillsborough County, and J. M. Lee as Comptroller of the State of Florida, and alleged that it was engaged in the conduct of a general abstract and title insurance business in the City of Tampa, Florida, and owned personal property consisting of furniture and equipment used in connection with the operation of the abstract and title business; a certain amount of cash on deposit in banks; designated stocks; abstract records, and accounts receivable.

The tax return as by it made to the County Tax Assessor, disclosed that it owned intangible personal property of a value of $35,000.00, and the Tax Assessor assessed the abstract records as tangible property and placed a valuation of $32,000.00 thereon and assessed its abstract records as intangible property for a valuation of $35,000.00. The plaintiff, being dissatisfied therewith, protested, the assessment of the abstract records so made as tangible personal property before the Board of County Commissioners of Hillsborough County acting as a Board of Equalizers, and contended that they should be assessed as intangible personal property, but the protest was rejected and the County Tax Assessor was by the Board directed to strike from the intangible property roll the abstract records assessed as intangible personal property.

The assessor complied with the order so made, with the result that the abstract records of the plaintiff remained assessed on the tangible personal property rolls of Hillsborough County at a valuation of $32,000.00, while plaintiff contended that the abstract records so owned by the plaintiff, as a matter of law, should be assessed as intangible personal property and not as tangible personal property, as it appears now on the tax rolls of Hillsborough County. The plaintiff tendered into court a sufficient amount of money to pay the assessment upon its abstract records as intangible personal property and otherwise offered to do equity.

The defendants filed a motion to dismiss the bill of complaint on the grounds viz: (1) the bill of complaint was without equity; (2) it affirmatively appeared that the described property was lawfully assessed; and (3) that the bill of complaint failed to allege discrimination against the plaintiff or that its property had been assessed in a manner different from other property of like nature and similarly situated. Likewise, a motion was filed to strike from the bill of complaint all allegations and references therein to the effect that the abstract information or abstract records were intangible personal property.

On January 21, 1943, an order was entered by the Circuit Court overruling the motion to dismiss and the motion to strike, and subsequently a reconsideration of the aforesaid order was had, when an order of affirmance was entered under date of March 10, 1943. The order of reconsideration was entered largely because the case of Brooksville Abstract Co. v. Kirk, 101 Fla. 175, 133 So. 629, had not been considered. The cause comes before this Court on petition for interlocutory writ of certiorari authorized by Supreme Court Rule No. 34, praying for an order quashing the order of the lower court dated January 21, 1943.

Evolved from the questions propounded, it is safe to conclude; that an answer to the following question will be determinative of the controversy presented: Are abstract records, consisting of certain loose-leaf records or memoranda showing certain information taken off from the public records, and so compiled and arranged in files as to tracts and names

as to enable abstractors, by reference thereto, to make abstracts of title, which abstract records also contain certain work sheets, abstractors' notes and indices, and all of which records are either in loose-leaf form or bound in loose leaf books, and were not produced for the purpose of sale or being dealt with as a commodity of commerce, and no part of which records proper is incorporated into the abstracts as produced and sold, but which are at all times kept and maintained for the sole and exclusive use of the compiler and which abstract records or memoranda consist of thousands of sheets of paper having certain matter written in typewriting, ink or pencil thereon, together with fasteners, binders and covers, pursuant to law, properly assessed for taxation as tangible personal property?

In Section 1 of Article IX of the Florida Constitution, adopted at the General Election of 1924, intangible personal property was not assessable at a higher rate than five mills on the dollar of the assessed valuation. The amendment as adopted conferred on the Legislature authority to provide for special rates of taxation on intangible personal property. See Porter v. First National Bank, 96 Fla. 740, 119 So. 130.

Pursuant to Section 1 of Article IX, the Florida Legislature enacted Chapter 20724, Acts of 1941, Laws of Florida, which, among other things, defined and classified for taxation. purposes intangible personal property. Section 2 of the Act defines "Intangible Personal Property" as "all personal property which is not in itself intrinsically valuable but which derives its chief value from that which it represents." Section 3 of the Act classifies for taxation purposes intangible personal property into four classes and identifies them as Classes A, B, C and D.

Class A intangible personal property is defined by the terms of the Act as "all moneys, United States Legal tender notes, bank deposits of all kinds, certificates of deposits, cashier's and certified checks, bills of exchange, drafts, and money placed with savings, building and loan associations." Class B is defined by the terms of the Act as being "all stocks, or shares of incorporated or unincorporated companies; all bonds except bonds of the several municipalities and counties

of the State of Florida, and also such bonds or governmental bonds as may be exempt from taxation under the Constitution or laws of the United States or the State of Florida; all notes, bonds and other obligations bearing date prior to January 1, 1942, for payment of money which are secured by mortgage, deed of trust or other liens upon real or personal estates situated in Florida, . . . ; and the beneficial interest of residents of Florida in trust estates of all kinds .. . . Class C is defined by the terms of the Act as being "all notes, bonds and other obligations bearing date subsequent to December 31, 1941, for payment of money which are secured by mortgage, deed or trust or other liens upon real property situated in Florida, provided that only that part of the mortgage, deed of trust, or other lien, the real property of which is located within the State shall bear to the whole value of the real property described in said obligation shall be included." Class D of the Act is to define and include "all other Intangible Personal Property not embraced in Classes A, B, or C."

Section 5 of the Act confers on the State Comptroller the power and duty to make or provide such reasonable rules and regulations as may be necessary and proper to effectuate and carry out the several terms, conditions and provisions of the Act.

Section 13 of the Act provides for the annual levy and assessment, and fixes the amount or amounts thereon to be assessed and collected, on all intangible personal property defined and classified as Classes A, B, C and D *supra* viz: (a) a tax of 1/20 of one mill on the dollar of the taxable value is assessed on intangible personal property classified and defined as Class A in Subsection (1) of Section 3 of the Act; (b) a tax of one mill on the dollar of the taxable value is assessed on tangible personal property classed and defined as Class B in Subsection (2) of Section 3 of the Act; (c) a tax of three mills on the dollar of the taxable value is assessed on intangible personal property classified and defined as Class C in Subsection (3) of the Act; (d) a tax of one mill on the dollar of the taxable value is assessed on intangible personal property classified and defined as Class D in Subsection (4) of the Act.

Abstract records are not named, classified or defined as intangible personal property in Subsections (1), (2) and (3) of Section 3 of Chapter 20724, *supra*. If classified as such for taxation purposes, they must necessarily fall within Class D, which is defined to include "all other intangible personal property not embraced in Classes A, B, or C" of Section 3, *supra*. Approximately ten years prior to the enactment of Chapter 20724, *supra;* this Court had before it the case of Brooksville Abstract Co. v. Kirk, 101 Fla. 175, 133 So. 629, in which it was held that an abstract plant was tangible property.

In the last above cited case, suit was brought by the Brooksville Abstract Company to enjoin the collection of a tax assessed against an abstract plant. The bill of complaint alleged that:

"its said abstract plant is without value except in the hands of complainant, and to the extent that complainant chooses to use same as a basis for producing documents of salable value; and that in the hands of any other person than complainant, said plant would be valueless, saving only as said complainant might lend value thereto by explaining the contents thereof, or assisting in the use thereof, and saving further only the intrinsic value of a few pounds of paper and bottles of ink, and other materials composing said plant, which intrinsic value is so small as to be negligible."

The sufficiency of the bill of complaint was tested by demurrer by which it was contended that "the bill of complaint alleged no facts whatever upon which equitable relief should be granted," and that the bill of complaint was without equity. The chancellor sustained the demurrer and the same on appeal here was affirmed, when we in part said:

"It is a matter of common knowledge that an abstract plant is tangible property possessing the attribute of value.

"There are no allegations in the bill upon which relief prayed for could be based.

"The order appealed from should be affirmed with directions that the demurrer be sustained and the bill is dismissed. It is so ordered."

Our holding in Brooksville Abstract Co. v. Kirk, *supra,* is in accord with the weight of authority and is based on sound reasoning. See 1 Am. Jur. 156-7, par. 3; Washington Bank of Walla Walla v. Fidelity Abstract & Sec. Co., 15 Wash. 487, 46 Pac. 1036, 37 L.R.A. 115, 55 Am. St. Rep. 902; Leon Loan & Abstract Co. v. Equalization Board, 86 Ia. 127, 53 N.W. 94, 17 L.R.A. 199; Thompson on Abstracts and Titles, (2nd ed.) 52-53, par. 36. In the case of State v. St. Paul Abstract Co., 158 Minn. 95, 196 N.W. 932, it was held that a set of abstract books is personal property for the purpose of taxation.

The chancellor in this case applied to the bill of complaint the minority rule recognized by the State of Michigan, which is to the effect that a set of abstract books, as here involved, is but the unpublished manuscript of an author, valuable only on account of its literary contents, and that it belongs to the unleviable class of property, such as patents or copyrights, etc. See Dart v. Woodhouse, 40 Mich., 399; Perry v. City of Big Rapids, 67 Mich. 146, 34 N.W. 530. Cooley on Taxation, Vol. 2 (4th ed.) 1214, par. 553, when considering abstract books, said; "Manuscript containing abstracts of land-titles have been held in Michigan not to be taxable property, but the contrary rule is announced in Iowa and in Washington."

We have been unable to find a Florida case holding to the effect that abstract records are not property or immune from taxation. We held in Brooksville Abstract Co. v. Kirk, *supra,* that an abstract plant was tangible property and possessed the attributes of value and therefore was taxable. This holding was not altered or modified in the enactment of Chapter 20724, *supra,* which therein defined and classified with exactness intangible personal property but failed to alter, change or modify our holding in the case of Brooksville Abstract Co. v. Kirk, supra.

Counsel for respondent cite 18 C.J.S. 138-142. Generally, it may be said the cited authority treats the subjects of: (a) copyrights; (b) common law copyrights; and (c) common law rights. Many of the cases cited in the brief are taken from the footnotes appearing on page 138 to 142 *supra.* The copyright features of the law applicable to the abstract

records of the respondent are not here involved. These citations throw but little light on the point in controversy, viz: should the abstract records be assessed as intangible personal property under Chapter 20724, *supra?* 1 R.C.L. 90, par. 2, simply recites the majority and minority rules. The copyright privilege of abstract records are not relevant to the controversy.

It is next contended that the following rule stated in Press Publishing Co. v. Monroe, 38 U. S. 410, 73 Fed. 196, 51 L.R.A. 353, (text: b. Compilers, 51 L.R.A. p. 358), is applicable:

"He who merely gathers and arranges in some concrete form materials that are open and accessible to all who have the mind to work with like diligence is as much the owner of the result of his labors as if his work was a creation rather than a construction . . ."

The answer to this contention is that the foregoing follows the Michigan minority rule while Florida adopted the majority rule in Brooksville Abstract Co. v. Kirk, *supra,* in 1931. The respondent's brief has been carefully studied and the authorities cited therein read and examined.

The petition for an interlocutory writ of certiorari under Supreme Court Rule No. 34 is hereby granted and the order dated January 21, 1943 is hereby quashed with directions to dismiss the bill of complaint.

It is so ordered.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.

TERRELL, J., dissents.

### ON REHEARING GRANTED

SEBRING, J.:

Guaranty Title Company is engaged in the conduct of a general abstract and title insurance business in the City of Tampa, Florida. It is the owner of abstract books and records of such completeness as to enable it to make abstracts of title to any and all tracts of land in Hillsborough County. The full cash value of these books and records is $35,000. Guaranty Title Company has returned this property for taxation purposes, as intangible personal property. The County Assessor of Taxes of Hillsborough County has refused to

accept this return, and has assessed the property as tangible personal property.

The sole question is whether abstract books and records, kept and used as the basis of a business for profit, are taxable under the tax laws of this State as tangible, or as intangible, personal property.

There are two relevant chapters dealing with the subject of taxation of personal property in this State: Chapter 199 and Chapter 200 Florida Statutes, 1941. The first defines and classifies intangible personal property and provides a method for assessment and collection of taxes on such property. The second defines tangibles, and makes provision for assessment and collection of taxes thereon.

By Section 199.01 Florida Statutes, 1941, the Legislature has given a broad general definition of intangible personal property. By Section 199.02, Florida Statutes, 1941, it has particularized the kinds of property to which the definition shall apply.

Intangible personal property is defined as "all personal property which is not in itself intrinsically valuable but which derives its chief value from that which it represents. Sec. 199.01 Florida Statutes, 1941. Such intangible personal property is divided into four classes: A, B, C, and D. Intangible personal properties in classes A, B, and C are defined as moneys, legal tender notes, bank deposits, certificates of deposits, cashier's and certified check, bills of exchange, drafts, money placed with savings or building and loan associations; stocks or shares of incorporated or unincorporated companies, certain public bonds, notes or other obligations secured by mortgages, deeds of trust, or other liens upon real and personal estates situated in Florida; and the beneficial interests in certain trust estates. Class D intangible properties are defined as "all other intangible personal property not embraced in classes A, B, or C." Sec. 199.02 Florida Statutes, 1941.

Section 200.01, Florida Statutes, 1941, defines tangible personal property as "all goods, chattels, boats, vessels, vehicles (except motor vehicles), animals and other articles of

value capable of manual possession and whose chief value shall consist of the thing itself and not what it represents."

Chapters 199 and 200 Florida Statutes, 1941, are complementary. They are mutually exclusive. Together, they purport to comprehend all personal property subject to taxation. Presumably, every item of taxable personal property falls within the scope of one, or the other, of the chapters. Neither chapter expressly enumerates "abstract records" as included within its purview.

It is insisted by the Tax Assessor that the question posed by the abstract company has been decided by Brooksville Abstract Company v. Kirk, et al., 101 Fla. 175, 133 So. 629; because there this Court said: "It is a matter of common knowledge that an abstract plant is tangible property possessing the attribute of value." We cannot agree that the cited case has settled the question. The issues involved in the Brooksville case were quite different from the issue we have presented here.

In the Brooksville case the abstract company had filed its bill of complaint against the tax collectors of Hernando County and the City of Brooksville to enjoin the collection of taxes assessed against its abstract plant. It alleged that its abstract plant was without value except in its hands and to the extent that it chose to use same as a basis for producing documents of salable value; therefore the plant was not subject to taxation. The prayer of the bill was that the court decree that the abstract plant was for private purposes only, and not lawfully subject to taxation.

Neither the City of Brooksville nor the County of Hernando had been made a party to the bill. The tax collectors had allowed default judgments to be entered against them. The circuit court had allowed the City of Brooksville to intervene and file demurrer. The plaintiff objected to the procedure and filed a motion to strike the demurrer. The lower court denied the motion, whereupon the plaintiff appealed from the order. The only error asigned was upon the order denying the motion to strike. The sole question brought to the court upon the appeal presented a matter of procedure. Notwithstanding the narrow issue presented, the court, in

disposing of the appeal, not only reviewed the order allowing the City to intervene and file demurrer, but also considered the allegations of the bill, finding them to be without equity. The quoted portion of the opinion herein alluded to was not necessary or essential to the decision in the case—a mere obiter dictum without force as precedent. Pell v. State, 97 Fla. 650, 122 So. 110; Hart v. Stribling, 25 Fla. 435, 6 So. 455. Therefore, the question raised on this present appeal was not decided in the Brooksville case, but is now here as one of first impression in this Court.

It is our conclusion that abstract books and records are not intangible personal property, within the purview of the legislative definition contained in Sections 199.01, 199.02, Florida Statutes, 1941. Section 199.01 defines the intangible personal property intended to be covered by the act. This general definition is qualified by the classification of such intangibles into four general classes. The Legislature has specifically described and enumerated intangibles falling into classes A, B, and C. It has placed all other intangibles "not embraced in Class A, B, and C" into Class D. In other words, it has enumerated certain intangibles specifically, in the first three classes; in the fourth, it has referred to them generally.

It is a familiar rule of statutory construction that when the context is in doubt, general words or phrases following an enumeration of specific things will usually be construed as having reference to things of the same kind, or specie, as those comprehended by the preceding limited and confined terms. Children's Bootery, et al. v. Sutker, 91 Fla. 60, 107 So. 345, 44 A.L.R. 698. Of course, the rule does not overrule all other rules; for when the particular preceding words or phrases exhaust the genus, general words must of necessity be construed to refer to words outside those particularized. U.S. v. Mescall, 215 U.S. 26, 30 Sup. Ct. 19, 54 L. Ed. 77; National Bank v. Estate of Ripley, 161 Mo. 126, 61 S.W. 587; Gillock v. People, 171 Ill. 307, 49 N.E. 712; Winters v. City of Duluth, 82 Minn. 127, 84 N.W. 788. But otherwise, when the meaning is in doubt the rule will generally be applied.

In our view of the thing, property falling in Class D must

be of the same quality, kind, character, or specie as that expressly enumerated in Classes A, B, and C. We can see no similarity, theoretically or practically, between abstract books and records and moneys, bonds, notes,. beneficial interests in trust estates, and other properties specifically enumerated in Classes A, B, and C. Neither can we see any similarity between such property and debit balances of a non-resident firm maintaining a branch office in Florida as a broker for securities, the debit balances being due from Florida customers; which property was held to be taxable as a Class D intangible, in Smith, et al., v. Lummus Tax Assessor, 153 Fla. 415, 14 So. (2nd) 897. We think that the books and records are taxable as tangible property, under Chapter 200, Florida Statutes, 1941.

' Counsel for the abstract company contend that the nature of its property is such that it cannot be considered as tangible, but only as intangible, property, for the reason that the chief value of the plant lies not in the property itself but only in that which it represents. Counsel liken the abstract plant to literary property—an intellectual composition—in which the owner has an absolute and exclusive incorporeal right of possession, use, and disposition.

As argued by counsel, the intrinsic value of the plant, for all practical purposes, is nothing; the extrinsic value is everything. That extrinsic value consists of the common-law right of publication given to every author; which is property separate and apart from his property in the paper on which his production is written. This property is protected by the common law. It is derived from the intellectual effort, skill,. and genius of the abstractor in compiling the information from the public records. As author of the compilation, the abstractor may make abstracts of title therefrom for a reward; or he may withhold it from publication altogether. If he sees fit to withhold his compilation from publication, no other person may use it, without the express consent of the owner. This incorporeal property right is of great value. In fact, it is the chief value of the compilation. Without it, the value of the plant is negligible, consisting only of the worth of the paper upon which the records are kept, when

sold as scrap paper. Because of the fact that the chief value of the abstract plant is extrinsic, rather than intrinsic, the plant is subject to taxation as intangible, and not as tangible, property.

It is difficult for us to follow the argument of counsel. There can be no doubt but that an author has a common-law right of property in literary or intellectual productions, which entitles him to the use of the production before publication. This right is exclusive as against the world. It is an intangible incorporeal right that exists separate and apart from the property in the paper on which the production is written, or the physical substance of which it is embodied. 18 C.J.S. 138; 34 Am. Jur. pp. 405-408. Such property right has long been recognized and protected in abstract books and records, so long as the manuscript remains unpublished. But the common law extends its protection no further than the first publication. When the first publication has been made, the common-law right of exclusive publication terminates, and the work falls into the public domain. By publication, it becomes dedicated to the public. Thereafter, the author has no exclusive right to multiply copies of the work or to control the issuance of copies by others. 18 C.J.S. 150; 34 Am. Jur. 407.

The rule of dedication and abandonment has been applied to abstract books and records. When the owner furnishes an abstract of title to the general public, this amounts to a publication as to the particular information contained therein, and deprives him of the *exclusive* right thereafter to multiply copies thereof, or to prevent others from doing so. Vernon Abstract Co. v. Waggoner Title Co., et al., 49 Tex. Civ. A. 144, 107 S.W. 919.

As stated, the theory of counsel is that the chief value of an abstract plant lies in the common law right of publication. If this theory is tenable, will not the value of the plant decrease from day to day in direct proportion to the number of abstracts released to purchasers, on the several tracts involved in the compilation? When the time comes that all tracts of land have been abstracted for the public, will not the extrinsic value of the plant be nothing; the common-law copy-

right having been completely extinguished or terminated by first publications? It seems to us that this must be so if we accept the theory of counsel. When the incorporeal common-law property right has become extinguished by user, will not the owner at that time be perfectly justified in demanding that thereafter his abstract plant be placed on the tax books as tangible personal property, and taxed only upon the then worth of the sheets of paper upon which his records are written—which will be their value as scrap paper? This would seem to follow, if the theory of counsel is sound. Yet it is hard to believe that when that time arrived the owner would be willing to sell his plant at such depreciated value, or that a prospective purchaser would expect to be able to buy it at that figure.

In our view, the chief value of books and records of an abstract company, kept and used as the basis of a business for profit is not extrinsic, derived from the common-law right of publication; but is intrinsic and inheres within the books themselves. To us, such property partakes of the nature of tangible, not intangible property. To be sure, abstract books and records are partly the result of intellectual effort, training, and skill on the part of the abstractor in accurately sorting, abridging, compiling, and indexing the information he has gathered from the public records. But what act of producing the finished product from raw materials is not the result of such qualities, in greater or lesser degree; be it manuscript or machine? The information contained in abstract books is not in any sense the independent creation of the mind of the transcribed. It is not the development of new thoughts and new ideas—an intellectual creation. About all that the information contained in an abstract book consists of is that which is to be found upon the public records, abridged, possibly, and arranged geographically as to parcels of land, instead of chronologically as to time of recordation. Such books and records are capable of manual possession. They have a particular location while in the hands of the owner for business. They are transferable from hand to hand. They are capable of seizure and delivery. They are useable by any person of ordinary intelligence and ability.

They are valuable for the information contained therein, in the collective form into which it has been cast by the labor of the compiler, when used as the basis of a business for profit. Partial publications of the whole are offered to the general public for a reward.

Counsel concede that the property in question is personal property. They admit that the abstract plant has a full cash value of $35,000. This value undoubtedly arises out of the fact that the information contained therein consists of public facts correctly abridged and arranged in readily accessible form, for the sale of copies of related portions thereof to the public. If the entries have not been accurately taken off the public records, and correctly transcribed, the value of the books and records is little or nothing. Such books and records, therefore, do not "represent" something, in the sense that the term is used in the statute; they are something in themselves. Their chief value lies not in that which they represent, but in that which they are. Completed and placed before the public for use and profit they are, in a sense, comparable to the work of an author that has been compiled and offered for sale. They are, in effect, the tools of trade with which the abstractor plies his calling.

We are not unaware of the fact that there is a conflict of authority on the subject. The constitution of the State of Michigan requires that all property shall be assessed at its cash value. In the fact of this constitutional provision the courts of Michigan have consistently adhered to the view that an abstract plant is not taxable as property. This conclusion has been reached because of the court's interpretation that the constitutional provision means that only that shall be taxed which not only may be put to valuable uses but that also has a recognizable pecuniary value inherent within itself, not enhanced or diminished according to the person who owns or uses it. According to the Michigan view, an abstract plant has no intrinsic value. Therefore, it may not to be taxed. See Dart v. Woodhouse, 40 Mich. 399, 29 Am. Rep. 544; Perry v. City of Big Rapids, 67 Mich., 146, 34 N.W. 530, 11 Am. St. Rep. 570. Loomis v. City of Jackson, 130 Mich. 594, 90 N.W. 328.

We find ourselves unable to follow this reasoning. In our opinion the abstract plant is "an article of value capable of manual possession . . . whose chief value . . . [consists] of the thing itself and not what it represents." Sec. 200.01 Florida Statutes, 1941. See Leon Loan & Abstract Co. v. Equalization Board, 86 Iowa 127, 53 N.W. 94, 41 Am. St. Rep. 486, 17 L.R.A. 199; Booth etc. Abstract Co. v. Phelps, 8 Wash. 549, 36 P. 489, 40 Am. St. Rep. 921, 23 L.R.A. 864; State v. St. Paul Abstract Co., 158 Minn. 95, 196 N.W. 932.

Accordingly, the opinion and judgment of this Court heretofore filed is now adhered to, except as the same is modified herein by our view of the effect of the opinion in Brooksville Abstract Co. v. Kirk, 101 Fla. 175, 133 So. 629.

It is so ordered.

BUFORD, C. J., BROWN, CHAPMAN and THOMAS, JJ., concur.

TERRELL and ADAMS, JJ., dissent.