**MARKS, et al v. GREEN, Comptroller, et al.**
**No. 16171.**

Circuit Court, Leon County.

May 4, 1959.

Marks, Gray, Yates & Conroy, Jacksonville, for plaintiffs.

Richard W. Ervin, Attorney General, Tallahassee, for defendants.

HUGH M. TAYLOR, Circuit Judge.

Plaintiffs are the personal representatives of the estate of the late Charles E. Merrill and, as such, and pursuant to the last will and testament of their decedent are limited partners in the firm of Merrill Lynch, Pierce, Fenner & Smith. The firm name was formerly, and will hereafter be referred to as Merrill Lynch, Pierce, Fenner & Beane.

The defendant taxing officials seek to enforce the payment of class B intangible personal property taxes for the year 1958 upon this partnership interest.

Plaintiffs assert that they are not liable for any taxes upon this asset because it is not within the terms of the statute levying intangible personal property taxes and for the further reason that the property is exempt from taxation as property belonging to a charitable and educational association. In the alternative plaintiffs assert that if the property is taxable it is only taxable as class D intangible personal property and that they are liable only for the lower rate of taxation imposed upon class D intangible personal property.

Merrill Lynch, Pierce, Fenner & Beane is one of the larger brokerage houses in the country. It operates as a partnership. It appears from the partnership agreement, a copy of which is before the court, that there are 37 general partners who are not limited partners, there are 36 partners who, with respect to a part of their investment, are general partners and who, with respect to part of their investment, are limited partners, and that there are 46 limited partners, among whom are the plaintiffs, who have absolutely no voice in the management of the business, but who have a specified share in its earnings and whose investment may be charged, under conditions specified, with losses of the business. The limited partners may not, of course, be held liable for losses in excess of their investment in the business. It is not without significance, however, that the partnership agreement spells out in minute detail the actual percentage of the profits accruing to each limited partner and these percentages are not in exact proportion to the investment of the limited partners in the business. The record does not disclose the reason for this differential, but it may reasonably be assumed that some *factors other than dollars of investment,* influenced the

establishment of the formula for the division of profits. These factors may have been the good will value of the names of limited partners, the amount of business that these limited partners would themselves give the partnership, or other similar reasons. For the purpose of this case, the court must assume that there was a legitimate business reason for this difference in the treatment of limited partners.

The questions whether the value of any partnership interest should be taxed under the intangible tax statute, chapter 199, F.S.A., and, if so, whether a distinction should be made between different types of partnerships, are difficult of solution.

Class B intangible personal property is defined by the statute in section 199.02 (2) as follows—

> Class B intangible personal property is hereby defined as being all stocks, or shares of incorporated or unincorporated companies; all bonds, except bonds of the several municipalities, counties and other taxing districts of the state, and except bonds of the United States government and its agencies; all notes, bonds, and other obligations bearing date prior to January 1, 1942, for payment of money which are secured by mortgage, deed of trust or other liens upon real or personal estates situated in Florida; provided, that only that part of the value of the mortgage deed of trust, or other lien, the property of which is located within the state shall bear to the whole value of the property described in said obligation shall be included; and the beneficial interest of residents of Florida in trust estates of all kinds when the trustee resides outside of the state, or if the trustee is a corporation and has its principal place of business outside of the state; provided, that if the trustee returns to the tax assessor such beneficial interest and pays the tax thereon to the tax collector in Florida, then the owner of such beneficial interests shall not be required to return the same for taxation; provided, further, that when the trustee is a resident of Florida and returns the corpus of the trust for taxation as provided by law there shall be no tax upon the beneficial interest in such trust.

It is apparent that by the use of the phrase "shares of incorporated or unincorporated companies" the legislature intended to tax the owners of investments in joint-stock companies and other similar enterprises which take the form of negotiable certificates of a readily marketable nature even though the certificates take the form of "shares" in a type of business organization which is technically a partnership. But because of the general nature of the intangible brought within the definition of class A it can be argued with much force that the legislature intended to include only negotiable shares of unincorporated companies in this class of intangibles which bear the higher rate of taxation.

Should plaintiffs' partnership interest be excluded from class A, the only other class in which they could be taxed is class D which is defined in section 199.02 (4) —

> Class D intangible personal property shall include all other intangible personal property not embraced in classes A, B or C.

In order to apply the definition of class D intangibles we must go back to the original definition of intangible personal property, defined as follows in section 199.01—

> "Intangible personal property" is hereby defined as all personal property which is not in itself intrinsically valuable but which derives its chief value from that which it represents. "Taxpayers" shall mean a person, firm or corporation who or which shall be liable for taxes under this chapter for intangible personal property.

It can be argued with some weight that under this definition an interest in a partnership is taxable because it is an asset—sometimes, as in this case, of great value—which might otherwise escape taxation and thus avoid its owners fair contribution to the expense of government, that it is not tangible personal property and that consequently the legislative intent to tax it should be drawn from the statutes as a whole. On the other hand, it can be argued with considerable weight that the definition of intangible personal property is a conclusive statement of the scope of the legislative intent to tax, that this definition includes only *personal property* which *represents* something of value, that there must be a token in some physical form which is the subject of taxation—a note, a bond, a stock certificate, a bank deposit slip, a mortgage, or some other physical thing which has value because it represents a debt, a lien or an interest in property. Would a partnership agreement fall within this construction of the statute?

It might well be said that the partnership agreement executed by the numerous partners and presumably kept in the offices of the partnership in New York is a physical thing owned in part by the plaintiffs and representing an investment in the partnership business and that it is therefore within this definition. If this reasoning is followed, what of other types of partnership—a real estate venture in which investment is the major factor—a mercantile business in which investment and personal services are of approximately equal importance—a professional partnership in which personal services are the major factor? In each of these cases there is a partnership agreement which represents something of value. Even the professional partnership is sometimes a very valuable thing. Men in the same profession, but having divergent talents

and special training, working together pursuant to a partnership agreement can often earn far more than they could practicing separately. Such a partnership often acquires a good will which has a value much greater than would attach to the members as separate practitioners. If one partnership agreement is to be taxed, it is difficult, from the language of the statute, to draw a distinction between the limited partnership such as that of which the plaintiffs are members and a professional partnership. The advantages of doing business as a limited partnership are so analogous to those of doing business as a corporation, and the nature of the investment of the plaintiffs in this case are so much like investment in stock of a corporation that it may well be said that they should be taxed. On the other hand, a reading of the statute does not give the impression that the legislature intended to tax professional partnership membership or professional partnership agreements.

The decisions of the Supreme Court construing the statute, none of which are directly in point, add to the complexity of the problem. In one case the Court said—

"Chapters 199 and 200, Florida Statutes, 1940, are complementary. They are mutually exclusive. Together they purport to comprehend all personal property subject to taxation. Presumably, every item of taxable personal property falls within the scope of one, or the other, of the chapters." Schleman v. Guaranty Title Co. 15 So. 2d 754.

In another case the Court said—

"Finally we approach a solution to the last question, i.e., whether or not that part of the decree directing the assessor to assess the value of the leasehold interest as tangible personal property can stand. We think we must answer in the negative because of the very definition of that sort of property appearing in Sec. 200.01, Florida Statutes 1953, and F.S.A. In the statute it is provided that tangible personal property 'shall include all goods, chattels, boats, vessels, vehicles (except motor vehicles), animals and other articles of value capable of manual possession and whose chief value shall consist of the thing itself and not what it represents'. It is obvious to us that a lease is none of these.

"The examination of the statute referring to tangible property has led us to the ones dealing with intangible property generally defined as 'personal property which is not in itself intrinsically valuable but which derives its chief value from

that which it represents.' Sec. 199.01, Florida Statutes 1953, and F.S.A. The interest of the lessee under a lease such as the one under study does not fall in this definition.

"In our examination of the tax statutes we have not found provisions for the specific assessment of the lessees' interest and we have been referred to none, although we are not conscious of any reason why the legislature could not set up machinery for that purpose in situations such as that presented in this case, but we are satisfied that the interests of lessees are neither tangible nor intangible personal property as presently defined.

"We conclude by quoting Sec. 3 or Article IX of the Constitution: 'No tax shall be levied except in pursuance of law.'" Park-N-Shop, Inc. v. Sparkman, 99 So. 2d 571.[1]

If the rationale of the first case cited is followed, every item of personal property, of whatever kind or nature, if not exempt, is subject to taxation and must be taxed either as tangible personal property or as intangible personal property under existing statutes. Whereas the second, and later, case cited clearly holds that there are two definitions, one of tangible personal property and the other of intangible personal property and that there may be items of property, a proper subject of taxation, which is not taxed because not included within either definition.

For the reasons to be presently stated, the court does not find it necessary in this case to answer these perplexing questions. They are mentioned in this opinion in the hope that the legislature, now in session, may see fit to enact clarifying legislation so that its intent in this regard may be made clear and the uncertainty now in the minds of the taxpayers, taxing officials, and, to be frank, this court, may be quickly and finally settled.

The last will and testament of Charles Edward Merrill, filed October 10, 1956 before the county judge of Palm Beach County, contains the following pertinent provisions—

"I specifically direct that my limited partnership interest in Merrill Lynch, Pierce, Fenner & Beane, together with all profits and interest earned at the date of my death, shall be turned over in kind to my Residuary Trustees, acting under

---

[1] Nothing in the opinion indicates any suggestion that the lease under consideration in the hands of the lessee was considered real estate.

Section 1 of Article XXI hereof; further, that in liquidating assets to pay debts, taxes and bequests, my Executors shall first liquidate other assets of my estate, and shall not liquidate any part of my limited partnership interest. * * *

"Article XII. My limited partnership interest in Merrill Lynch, Pierce, Fenner & Beane, and all the rest, residue and remainder of my property and estate * * * I give, devise and bequeath as follows: 1. To my Residuary Trustees hereinafter named, to be held in trust and disposed of as follows:"

(There follows an enumeration of admittedly charitable and educational purposes.)

This will was construed by the county judge of Palm Beach County by judgment entered April 14, 1957, in which it is held with respect to the income of the partnership earned during administration of the estate—

"The decedent's interest in Merrill Lynch, Pierce, Fenner & Beane, together with all interests and profits earned or accrued prior to his death and all interest and profits earned subsequent to his death should be paid to the residuary trustees acting under Article XXI and should be excluded from the estate for the purpose of determining the value of the estate and allocating its net income as stated in the next paragraph."

By January 1, 1958, the administration of the estate had been substantially completed with the exception of certain items of taxation, some unpaid bequests and a fund to meet contingencies. The partnership interest of the estate was still held by the executors although the time for filing claims against the estate had long past and no reason appeared why it would be necessary to invade this asset (in violation of the express intent of the testator) in order to complete the administration of the estate.

In this factual situation is the partnership interest in Merrill Lynch, Pierce, Fenner & Beane subject to taxation, or is it exempt under section 199.02 (5) of the statute, which provides—"Intangible personal property belonging to the state, or any political subdivision thereof, and intangible personal property belonging to any religious, charitable, benevolent or educational association shall be exempt from taxation"?

The court is of the opinion that the property in question is exempt from taxation under this provision of statute.

It is clear from the will that the testator used every reasonable means to insure that this specific property would find its way into channels of charity and education, free from taxation. It is equally clear that the legislature intended to grant an exemption from taxtion to the assets of charitable and educational organizations. But if this property, solely because of the delays in administration, is held to be subject to taxation, then the amount of money to be devoted to educational and charitable purposes will be reduced by the amount of the taxes collected by the state, and the wishes of the testator and of the legislature will be to that extent thwarted. This is a practical application of the statute.

But technical reasoning leads to the same result. The statute exempts from taxation property "belonging to" certain associations. The property in question was specifically devised to certain trustees. The testator, in order to insure the full enjoyment of this devise by the intended ultimate beneficiaries, directed that other assets of his estate be liquidated before any part of this property should be sold to pay debts, taxes or other bequests. By January 1, 1958, it had become apparent that no necessity existed or could reasonably arise by which it would be necessary to divert this property from the specific devise. Bare, legal title was vested in the executors, but the executors themselves were trustees holding the property for the use and benefit of the residuary trustees named in the will. They had no legal right to divert it to any other purpose. Under these circumstances the property "belonged" to the beneficial owner.

Executors of a will are trustees for the benefit of those entitled to participate in the estate. Even if we measure the application of the statute by the legal title alone, the legal title was in trustees (the executors) who were by law required to deliver it to other trustees (the residuary trustees) who, in turn, were to deliver it to the schools and churches which were to actually spend the money. In the hands of the executors, who held the legal title, the property was dedicated, and, at least after the time for filing claims against the estate had expired, irrevocably committed to the educational and charitable purposes planned by the testator. Under these circumstances the statute clearly grants exemption from taxation to this property.

Counsel will prepare an appropriate decree.