STATE EX REL. DANE COUNTY TITLE COMPANY, Appellant, vs. BOARD OF REVIEW OF CITY OF MADISON, Respondent.

*October 8—November 5, 1957.*

For the appellant there was a brief by *Aberg, Bell, Blake & Conrad* and *Charles P. Seibold,* all of Madison, and oral argument by *Mr. William J. P. Aberg* and *Mr. Seibold.*

·For the respondent there was a brief by *Harold E. Hanson,* city attorney, and *Henry B. Buslee,* assistant city attorney, and oral argument by *Mr. Buslee.*

STEINLE, J. The appellant, Dane County Title Company, contends (a) that its title records are not taxable under provisions of sec. 70.04, Stats.; (b) in the alternative, that if such title records are within the purview of sec. 70.04, they are specifically exempted as intangible property under the provision of sec. 70.112; (c) that there is no credible evidence under any reasonable view to sustain the valuation of $34,500 as determined by the assessor and confirmed by the board; and (d) in the alternative, should it be determined that there is credible evidence to sustain the valuation of the assessor and the board, then, nevertheless the same was based on improper considerations or upon false assumptions or theories.

Sec. 70.04, Stats., provides in part as follows:

"DEFINITION PERSONAL PROPERTY. The term 'personal property,' as used in this title, shall include all goods, wares, merchandise, chattels, and effects, of any nature or description, having any real or marketable value, and not included in the term 'real property,' as above defined."

Sec. 70.112, Stats., provides in part as follows:

"PROPERTY EXEMPTED FROM TAXATION BECAUSE OF SPECIAL TAX. The property described in this section is exempted from general property taxes:
"(1) *Money and intangible personalty.* Money and all intangible personal property, such as credit, checks, notes, bonds, stocks, and other written instruments."

Germane also is sec. 272.18, Stats., which provides in part as follows:

"PROPERTY EXEMPT FROM EXECUTION. No property hereinafter mentioned shall be liable to seizure or sale on execu-

tion or on any provisional or final process issued from any court or any proceedings in aid thereof, except as otherwise specially provided in the statutes: . . .

"(13) *Supplies for abstracts.* All books, maps, plats, and other papers kept or used by any person for the purpose of making abstracts of title to land."

Appellant is engaged in the business of selling abstracts of title, title insurance, and related services. It owns and possesses the title records in question. The said records consist of notes and memoranda carefully indexed as to tracts of land. They contain abstracts of all instruments affecting title to land in Dane county as recorded in the office of the register of deeds of said county for the period from 1832 to the present time. Included also are copies of additional public records affecting title to property in Dane county such as court proceedings, tax judgments, attachments, and other liens, all of which too are indexed according to tract or alphabetically. Actually appellant maintains a tract index of every piece of land in Dane county from the time of government survey to date. Since January 1, 1943, the Dane county register of deeds office has maintained a complete public tract index of all items of record from that time forward. While the Dane county register of deeds office does not possess a public tract index of records preceding January 1, 1943, it does have a grantor-grantee index covering the periods both before and after January 1, 1943.

In 1950 and annually thereafter through 1953, the assessor of the city of Madison assessed the value of appellant's title records at $125,000. The assessments were confirmed by the Board of Review. In prior certiorari proceedings involving a review of the assessments of those years, the circuit court for Dane county, the late Hon. ALVIN C. REIS then presiding, reversed the assessments on the ground that the same were too high. Subsequently, and after further hearing, the Board of Review set the amount at $34,500 for each of the

years 1950–1953. In 1954 the assessor of the city of Madison assessed the title records at $34,500. That assessment was confirmed by the Board of Review. The appellant accepted a refund for the years 1950–1953 and instituted the instant certiorari proceeding to review the 1954 assessment.

The questions presented by the appellant as to whether title records such as here are personal property within the definition of sec. 70.04, Stats., or whether they are intangible personalty and hence exempt from taxation under sec. 70.112, are considerations of first impression in this court. There is a conflict of authority as to whether abstract books and records are subject to taxation. 2 Cooley, Taxation (4th ed.), p. 1214, sec. 553. The respective authorities are comprehensively annotated at 149 A. L. R. 1038. In Michigan it has been held that abstract books referring to land titles are not subject to a property tax. *Dart v. Woodhouse* (1879), 40 Mich. 399; *Perry v. Big Rapids* (1887), 67 Mich. 146, 34 N. W. 530; *Loomis v. Jackson* (1902), 130 Mich. 594, 90 N. W. 328; *Bay Trust Co. v. Bay City* (1937), 280 Mich. 44, 273 N. W. 437.

In other jurisdictions abstract books have been held to be subject to property taxes. *Hidalgo Guarantee Abstract Co. v. Edinburg* (Tex. Civ. App. 1944), 181 S. W. (2d) 597; *Brooksville Abstract Co. v. Kirk* (1931), 101 Fla. 175, 133 So. 629; *Schleman v. Guaranty Title Co.* (1943), 153 Fla. 379, 15 So. (2d) 754; *Leon Loan & Abstract Co. v. Equalization Board* (1892), 86 Iowa, 127, 53 N. W. 94; *State v. St. Paul Abstract Co.* (1924), 158 Minn. 95, 196 N. W. 932; *Booth & Hanford Abstract Co. v. Phelps* (1894), 8 Wash. 549, 36 Pac. 489; *Washington Bank v. Fidelity Abstract & Security Co.* (1896), 15 Wash. 487, 46 Pac. 1036.

See also 84 C. J. S., Taxation, p. 188, sec. 77, and 16 McQuillin, Mun. Corp. (3d ed.), p. 122, sec. 44.44.

At 51 Am. Jur., Taxation, p. 440, sec. 419, it is said:

". . . and most courts hold abstract books, title books to be taxable as personal property, although there is some authority to the contrary."

1 Am. Jur., Abstracts of Title, p. 156, sec. 3, states:

*"Property in Abstract Books.* In the orderly and profitable transaction of the business of furnishing abstracts of title, the persons engaged therein sometimes compile in books all the information which they may be called on to furnish respecting the title to real property in the locality where they operate. These abstract books are prepared at considerable expense, and constitute the working plant of a profitable business. They are consequently of great value to the owners, but their novelty as articles of ownership gave rise to some doubts as to their legal character as property. In one of the earlier cases the court adopted the view that abstract books have no inherent value and therefore are not subject to execution as property, and this decision was adhered to in a later case in the same jurisdiction holding that such books are not taxable. The weight of authority, however, as well as sound reasoning, supports the view that abstract books are property with all the usual incidents of other property, and as such may be seized under execution against the owner, and are subject to taxation."

In Thompson, Abstracts and Titles (2d ed.), p. 52, sec. 36, the following analysis of authorities is stated:

*"Taxation of abstract books.* There is a lack of uniformity of opinion relative to the question of the liability of abstract books to taxation. Some courts class them with private manuscripts as being of no intrinsic value, and for this reason say they are not liable to taxation. These authorities contend that such books are only valuable for the information they contain, and that information is conveyed by consultation or extracts; that their value is only kept up by their completeness and continued correction; that the sale of a complete copy would practically destroy their value in the hands of their owner; and that a similar compilation by any one else would have a like result. They hold that the value of such books, except as they are used, is nothing; that they resemble in nature, if not precisely, the books which are con-

sulted by any person who makes an income from his acquired knowledge, whether scientific or otherwise. [*Dart v. Woodhouse* (Mich.), *supra,* and *Perry v. Big Rapids* (Mich.), *supra.*] Although such books may be made subject to levy and sale on execution by statute, it is held that such a statute will not operate as modifying the rule by which they are considered not to be subject to taxation. [*Loomis v. Jackson* (Mich.), *supra.*] In some jurisdictions, however, such books, being used as a means of profit, are considered property having a market value, and may be properly assessed for taxation. [*Leon Loan & Abstract Co. v. Equalization Board* (Iowa), *supra,* and *Booth & Hanford Abstract Co. v. Phelps* (Wash.), *supra.*] It is argued that the chief value of such books consists in their contents being kept from the public. 'They are the means, in a sense the instruments, for carrying on a business; as much so as are the tools or machinery by which the artisan plies his calling.' [*Leon Loan & Abstract Co. v. Equalization Board* (Iowa), *supra.*] It is held that the fact that the books are largely in abbreviations and in cipher code which only a limited number of persons understand does not render them exempt from taxation. [*Booth & Hanford Abstract Co. v. Phelps* (Wash.), *supra.*]"

From the evidence in the case at bar we are of the opinion that the title records in question constitute "personal property" in that they are chattels, and in that they have a real or marketable value, all within the definition of sec. 70.04, Stats. We are not in accord with the rule of the Michigan cases. That the records in question constitute "property" is not controverted. That they are of use and value to appellant was conceded by its president, Leonard F. Fish. In his testimony Mr. Fish also designated the appellant's tract index as a working tool. It is not denied that by means and use of the notes, memoranda, and indexes the appellant is enabled to make abstracts of title to all tracts of land in Dane county.

We find an abundance of evidence sustaining the Board of Review's determination that the title records in question

have real or marketable value. One item that stands out is the action of the appellant in having carried the title records on its books up to 1953, with value in the last year of said period at $193,200. Judge REIS in a former proceeding, it is true, ruled that such evidence had been completely explained by appellant; that the book value had no relationship to market value; and that the *prima facie* evidence adduced by the assessor at the hearing before the Board of Review in relation thereto, was completely refuted. However, there are other items which the board was entitled to consider in its determination of whether the title records had real or market value, viz., that in June of 1950, appellant's president had advised Dane county that it would cost said county $100,000 to $150,000 to prepare a complete tract index for the period 1832 to 1943; that the register of deeds of Dane county estimated that it would cost Dane county about $166,000 to develop its own tract index,—the cost to date of actually preparing a quarter portion of such index as already completed, amounting to somewhat over $43,000; that a former competitor of appellant company had testified that were he possessed of the means to buy, he would pay $150,000 to $175,000 for the title records in question for use in a going abstract and title business; that, as also stated by said last-mentioned witness, the advantage and utility of an abstractor working with a properly indexed tract index as against one working without such assistance, would be like "having a punch press or drilling a hole by hand." Another item which the Board of Review was entitled to consider in its determination of whether the title records had market value, and if so, the amount thereof, was the testimony of appellant's president that in 1950 appellant carried fire insurance (Destruction of Records Policy) in the amount of $100,000, and in the years 1951, 1952, and 1953 in the amount of $125,000, upon all of its records, said amount covering abstracts and records in the possession of

appellant but belonging to others, as well as the appellant's title records in question. Appellant's president also testified that when in 1929 appellant purchased the business of the Dane Abstract of Title Company,—the sale having included all assets, real and personal,—the appellant placed a value of $20,400 on its own books for the title records (including a complete tract index of transactions from government entry to that date) purchased in said sale.

It appears from the evidence that a concern by utilizing the facilities in the register of deeds office of Dane county can successfully operate an abstract and title business without the aid of a tract or judgment index, but that such method is far more cumbersome than that employed by the appellant. No abstractor in Madison or Dane county, other than the appellant, has a complete abstract plant. In the case at bar the trial court observed that: "Counsel for taxpayer argues that income is not material, for taxpayer's income was based entirely on services rendered. That may be true, but the tract indexes and other title records are the abstractor's tools. Without them the services which produced the income could not have been performed, at least not so well or so profitably." We agree that the title records here are appellant's tools, and it is considered that without their possession and the use of the same, appellant could not operate its business as effectively as it does.

Appellant submits that title records are of the same character or classification as some other items which are not taxed, such as: Lawyers files, records, and indexes; records and indexes of a credit bureau, records and indexes of a newspaper "morgue;" records and indexes of an accountant; statistical records and indexes of an investment house; X-ray plates, records, and indexes of a physician or dentist; prescription files and indexes of a pharmacist; subscription lists of newspapers, etc.; insurance agents' renewals, and negatives and indexes of a commercial photographer. Whether or not

all of such items would actually be exempt in particular circumstances is not for us to determine here.

In our view title records of an abstract and title office (notwithstanding that in the main they are written or typewritten rather than printed) have characteristics that resemble lawbooks in an attorney's office, particularly books containing reports of cases. They are not like lawyer's files, records, and indexes. Were a lawyer who possessed no such reports interested in obtaining copies of decisions of cases (as reported in such books) he obviously could obtain the same from the courts which rendered the decisions. True, such method of obtaining the desired information would be cumbersome. With such books available to him in his office, the lawyer ascertains with dispatch that which he seeks to know and use in his work. Lawbooks used by lawyers in their profession are not exempt from taxation under the Wisconsin statutes. The appellant or any other person can, of course, prepare an abstract of title for a customer by only consulting the records in the office of the register of deeds. In the instant case it appears that there is no complete tract or judgment index available for public use in the register of deeds office. Were any abstractor to retain copies of the abstracts that he made for others or were he to keep a listing thereof, it is conceivable that such copies of abstracts or lists would not be taxable in that the same would have no market value. These obviously would fall in the category of many of the items referred to by the appellant in its argument upon this subject. There is a decided difference in having available in an abstract office a completely indexed collection of authentic notes and memoranda of all public records relating ·to grants, judgments, liens, etc., for use in the preparation of abstracts of title or for title-policy purposes, and having a collection of copies of abstracts made for customers, or a listing thereof. It is our view that if a lawyer compiled a

collection of law notes for use in his work, and such collection had a sale value, the same would be taxable.

It appears to us also that by its enactment of sec. 272.18 (13), Stats. (which provides that all books, maps, plats, and other papers kept or used by any person for the purpose of making abstracts of title to land, constitute property which is exempted from execution), the legislature fully intended to provide that an abstractor be not stripped of his tools and deprived of his effective means of livelihood.

We now consider appellant's contention that notwithstanding that the title records are deemed to be personal property, they are actually intangible personalty and hence are exempted from taxation under the provision of sec. 70.112, Stats.

Statutes according exemption from taxation are to be strictly construed and understood to confer exemption only so far as their words, by their natural or necessary meaning, go. *Gymnastic Association v. Milwaukee* (1906), 129 Wis. 429, 434, 109 N. W. 109; *Katzer v. Milwaukee* (1899), 104 Wis. 16, 21, 80 N. W. 41. Exemption from taxation, to be valid, must be clear and express. All presumptions are against it. It should not be extended by implication. *Milwaukee E. R. & L. Co. v. Wisconsin Tax Comm.* (1932), 207 Wis. 523, 536, 242 N. W. 312, 317.

Tax exemptions are matters purely of legislative grace, and tax statutes are to be strictly construed against the granting of the same. One who claims a tax exemption must point to an express provision granting such exemption by language which clearly specifies the same, and thus bring himself clearly within the terms thereof. *Comet Co. v. Department of Taxation* (1943), 243 Wis. 117, 123, 9 N. W. (2d) 620.

Secs. 70.111 and 70.112, Stats., treat with personal-property tax exemptions. In neither of said sections are abstract or title records expressly exempted. Appellant con-

tends that the title records in question are exempted as "intangible personalty" such as "written instruments," as provided in sec. 70.112(1). We cannot agree. It is our view that under the principle *ejusdem generis,* the terminology "written instruments" as used in sec. 70.112 (1) refers to writings that evidence rights and obligations of things involving money credits. Such written instruments are intangible in the sense that of themselves they have no or little intrinsic value, but that they are representative of things that have value. The appellant's title records are chattels that have value in themselves,—actual pecuniary worth based upon their own essence and content. They are not merely representative of other things of tangible value. They are tangibles in and of themselves.

In 1930 the Wisconsin tax commission compiled a manual for use by tax assessors in this state. It was entitled "Wisconsin Tax Laws, A Compilation of the General Laws of the State Relating to the Assessment and Collection of General Property Taxes." In said manual and under the heading of "Furniture, Fixtures, and Equipment," the following was stated: "Abstract Books. Abstract books are subject to taxation as property."

In connection with said statement the following authorities amongst others were cited in the manual: *Leon Loan & Abstract Co. v. Equalization Board* (Iowa), *supra; Booth & Hanford Abstract Co. v. Phelps* (Wash.), *supra;* and *Hidalgo Guarantee Abstract Co. v. Edinburg* (Tex.), *supra.* In a new manual issued by the Wisconsin tax commission in 1952, and under the heading of "All Other Personal Property," it was said that *abstract records* are subject to taxation.

Appellant argues that the Wisconsin tax commission itself between 1930 and 1952 treated title records as intangibles, since its manual directed only the assessment of the

tangible loose-leaf books and filing equipment in which an abstractor's records were kept. Appellant submits that the long-continued administrative construction by the Wisconsin tax commission of abstract books as equipment or furniture is of great weight in construing sec. 70.04, Stats. Appellant also submits that the change in the manual of 1952 wrought an arbitrary classification in that the records of no other business are so treated. However, our concern is with the assessment of 1954 and the confirmation thereof. It is considered that the 1952 manual correctly declared under its heading "All Other Personal Property," that abstract records are taxable. The furniture or physical equipment in which such records are kept would still be assessable under the category of "Furniture, Fixtures, and Equipment." As to appellant's position that the tax commission set up an arbitrary classification, we refer to the views hereinbefore expressed in distinguishing title records from lawyer's files, records, indexes, etc.

We now come to a consideration of whether there is competent credible evidence to sustain the valuation of $34,500 placed on appellant's title records by the Board of Review. Appellant submits that there is no credible evidence of record to sustain the determination of the board that the title records have a valuation of $34,500; or, in the alternative, that such valuation was based on improper considerations or on false assumptions or theories.

On certiorari, judicial matters only can be reached, and the presumption is that the determination of the board is correct. If on any reasonable view of the evidence, it will support the conclusion arrived at, the board had jurisdiction to decide as it did. *State ex rel. Althen v. Klein* (1914), 157 Wis. 308, 311, 312, 147 N. W. 373. See also *State ex rel. Morehouse v. Hunt* (1940), 235 Wis. 358, 367, 291 N. W. 745.

In *State ex rel. Kenosha Office Bldg. Co. v. Herrmann* (1944), 245 Wis. 253, 257, 258, 14 N. W. (2d) 157, 14 N. W. (2d) 910, this court said:

"The usual course in certiorari to review the action of a board of review has been for the trial court to determine whether the undisputed evidence submitted by the taxpayer was such as to show the assessment objected to was not based on sale value as fixed by the statute. If so the assessment has been set aside. Where the evidence so produced was controverted,—if in any reasonable view the evidence as a whole would support the assessment,—the assessment has been upheld. Also, if the record before the court showed that the assessor or the board excluded from consideration evidence entitled to consideration or if the assessor based his valuation on improper considerations or went upon a false assumption or theory in determining the amount, or gave to facts considered unwarranted effect or drew from them unwarranted conclusions the assessment has been set aside. The recent cases of *Estate of Ryerson,* 239 Wis. 120, 300 N. W. 782, and *State ex rel. Hennessey v. Milwaukee,* 241 Wis. 548, 6 N. W. (2d) 718, illustrate what will justify setting aside an assessment, although they do not purport to include everything that will justify such course. Arbitrary conduct of the board,—a refusal to accede to the taxpayer right to contest an assessment; treating him as an interloper, improperly taking their time and troubling them by bringing his claim of an excessive assessment before them; predetermining from whatever cause or consideration to uphold the assessment before the taxpayer has presented his evidence or his reasons in support of his claim,—are sufficient, when clearly appearing, to justify the trial court in vacating the assessment."

It is in the light of the principles just above set forth that the particular issues here must be determined.

In the instant proceeding the trial court had before it the record of the previous proceedings in certiorari relating to the Board of Review's assessments of appellant's title records for the years 1950, 1951, 1952, and 1953. Following

a hearing on said previous proceeding, the court reversed the assessment of $125,000 and remanded the matter to the board for further consideration. On September 29, 1954, after a hearing, the board determined that the title records had a valuation of $34,500. A record of the board's action on September 29, 1954, appears in the evidence of the instant proceeding. That record includes a statement of the board's determination, which reads as follows:

"Mr. Sieker: The Board of Review finds the following facts to be true in the assessments for the years of 1950, 1951, 1952, and 1953 of the title records of the Dane County Title Company, namely, that the cost of reproducing the tract index from date of government entry to January 1st, 1943, the date when the Dane county index begins, at 25 cents per entry for 667,290 entries would be in the sum of $166,825. The evidence shows that these records were used in 13 per cent of their total business. Therefore, their value was 13 per cent of their reproduction cost. Thirteen per cent of the cost of reproduction would be $21,587. To this a sum of $5,396 was added as an additional 25 per cent value of $21,587 for the added convenience of having these records ready and available in the abstract office, making a total of $26,983. To this was added the sum of $7,500 which is the value of the microfilming of the records and index of the Dane County Title Company, making a total of $34,483 as the total value of the title records of the Dane County Title Company.

"It is our conclusion, then, that the assessment should be in the amount of $34,500 for the years 1950, 1951, 1952, and 1953, respectively, being a reduction of $90,500 on title records."

There is evidence of record to the effect that the assessor's determination of the 1954 valuation of the title records was based upon the Board of Review's figure of valuation of said property, notwithstanding that the assessor did not adopt the method of the board in arriving at such figure. The assessor considered the figure to be lower than it ought

to have been. There is no evidence of record of any sale in this state of title records as separate property. There is, however, evidence of sales of abstract plants in the state. It appears that when abstract and title companies have been bought and sold, the value of title records was not separately stated in the contracts of sale. Because no information was available to him of the sale of title records separately, the assessor resorted to other standards. In the determination of value he considered the amount of insurance carried upon the records by the appellant; the price that a practical abstract man would pay for the records independent of the business; the original or historical cost; the cost of reproduction; obsolescence; the net earnings of the appellant from its business. He also considered the fact that a competing abstract company had commenced business in Dane county in 1952 which concern did not possess its own title records. He considered the real-estate market activity in Dane county and the increased volume of abstract and title business resulting therefrom. He considered the fact that appellant did not discontinue the development of its own tract index after Dane county began to develop a tract index in 1943.

In *State ex rel. I. B. M. Corp. v. Board of Review* (1939), 231 Wis. 303, 285 N. W. 784, the court held that an assessment based almost entirely upon the gross annual income of the taxpayer, less an amount that the assessor deemed sufficient to cover the costs of the services rendered by the taxpayer, and with an arbitrary capitalization of the remainder, was not the proper method of determining the valuation of the personal property in question. The court pointed out (p. 311) that "Neither [assessor] gave any consideration to such elements as costs, depreciation, replacement value, obsolescence, amount of insurance carried, actual cost of the service rendered by the plaintiff under the contract, nor did they in any manner controvert or dispute the

testimony given by the plaintiff's witnesses as to such elements."

In that case the court indicated that since the property was not such as was ordinarily bought and sold, assessments should relate to the cash price that the property would bring if offered for sale. The court expressed the opinion that if the property was sold for cash, it would probably be at a price over costs and substantially comparable to that of other kinds of property which was manufactured and sold by the taxpayer.

In *State ex rel. North Shore Development Co. v. Axtell* (1934), 216 Wis. 153, 256 N. W. 622, an assessment of real estate was involved. It was held that cost, depreciation, replacement value, earnings, industrial conditions, location, and occupancy are proper for consideration in determining the assessment value of improvements on land within sec. 70.32, Stats., requiring sale value as the basis of assessment. *Rahr Malting Co. v. Manitowoc* (1937), 225 Wis. 401, 274 N. W. 291, also treated with the assessment of real property. It was there held that under sec. 70.32(1), requiring sale value as the basis of assessment, the valuation given to real estate on a taxpayer's income-tax return, together with evidence of reconstruction costs, sale price, appraisal price, earnings, and going value, could properly be considered by the Board of Review in fixing the assessment value of the property.

In the case at bar, the contentions of the appellant that there is no credible evidence to sustain the valuation, or in the alternative, that notwithstanding there may be such, the assessor and the board base their determination of the valuation on improper considerations, or upon false assumptions or theories, are predicated on matter of record as follows: (a) The absence of any showing that abstract records and indexes are sold independent of the business in which they

are used; (b) the cost of purchasing abstract records together with the business in which they are used is so intermixed with the cost of good will, the cost of eliminating competition, etc., that it is practically impossible to make a determination of the independent value of the abstract records and indexes; (c) since the Dane county register of deeds office has provided a public tract index for the period subsequent to January 1, 1943, and that 87 per cent of the abstract business in Dane county can now be done by use of said public index, the value of the appellant's title records, even as a convenience, has been reduced in value to a negligible amount; (d) a competing abstract company does business from the public records at a lower price without an independent tract index. It has not even invested $350, the cost of microfilming the public tract index which covers 87 per cent of its business; (e) the assessor's consideration of historical and replacement cost has no relationship to the value of appellant's tract and judgment indexes; (f) the assessor was not warranted under *State ex rel. I. B. M. Corp. v. Board of Review, supra,* to consider the earnings of the appellant in connection with the determination of the value of the title records; (g) the president of the company testified without contradiction that he could replace all essential records desired for use in his company's business by microfilm process at a cost of $5,000; (h) notwithstanding the testimony of the register of deeds that a complete tract index as acquired by Dane county would cost $166,000, and not withstanding the testimony of appellant's former competitor that the value of appellant's tract index as part of a going business was $150,000 to $175,000, nevertheless both of said witnesses disclaimed knowledge of market value, and their testimony as to replacement, etc., has no bearing on the commercial value of appellant's indexes, particularly in view of the uncontradicted testimony relative to the use and reproduction of the public tract index by appellant or its competitors; (i)

the assessment of $34,500 is not justified on the basis that appellant indicated that it would not sell its tract index for $450, such sum being equal to the cost of microfilming; (j) the formula of the board which resulted in a valuation finding of $34,500 (which figure was used by the assessor), erroneously included the cost of indexing at 25 cents per instrument, whereas appellant's president testified that the individual cost per instrument would be but 12 cents.

It is our view that contentions (a) to (j) just above noted do not individually nor collectively demonstrate conclusively that a reasonable value of the title records is less than $34,500. There was no information available to the assessor with respect to any sale in this state of title records as a separate entity, *i. e.*, as exclusive from the other assets of an abstract and title concern's business. The cash sale value of such records cannot be compared with that of other property as is suggested in *State ex rel. I. B. M. Corp. v. Board of Review, supra.* Under the circumstances the assessor was justified in employing the elements for determination of valuation as approved in *State ex rel. North Shore Development Co. v. Axtell, supra,* and *Rahr Malting Co. v. Manitowoc, supra,* in so far as the same were reasonably adaptable to the personal property which it was his obligation here to assess. The considerations upon which the assessor based the valuation of the title records were proper. It appears to us that they were not incorrectly applied.

The title records have a substantial valuation. The mere absence of evidence that title records are not sold separately, or that it is difficult to appraise their value for the reason that their cost is intermixed with the cost of other business items, including good will and the elimination of competition, etc., does not make appraisement an impossibility. The fact that there is now available in the office of the register of deeds a tract index of records filed after January 1, 1943, which is adequate to efficiently aid an abstractor in the per-

formance of 87 per cent of his business, does not, in our opinion, reduce to negligibility the value of the appellant's complete records and indexes in question. Appellant's president testified that his company has a property right in its records and indexes, and that no other person has a right to use them. He also testified that it would cost in excess of $100,000 to produce such records and indexes by the means with which they were produced and in the form in which they appear, although a microfilm production of all records in the register of deeds office would only cost about $5,000. It seems to us that appellant's records have worth not only with respect to convenience but utility as well. A microfilm reproduction of the records in the register of deeds office would not be identical in form nor as to utility when compared with the records and indexes that appellant owns. It appears that the assessor and the board when computing the value of the title records in question, gave consideration to the process of microfilming the public records now available to abstractors. Because of the cost of reproduction and the difference in respect to utility, it is not reasonable to assume that appellant's title records have been reduced in value to the exact amount of the cost of microfilming the public records. In *State ex rel. I. B. M. Corp. v. Board of Review, supra,* disapproval was expressed of the use by an assessor of gross earnings when considering valuation. In the instant matter the assessor considered only net earnings of the appellant. It appears, too, that while the assessor's valuation of the records coincided with that of the Board of Review in earlier proceedings, the assessor did not adopt the formula employed by the board. The attack by the appellant upon the board's inclusion of indexing cost at 25 cents instead of 12 cents per instrument is therefore irrelevant and of no force.

It is not the function of the court in certiorari in a situation as here to weigh the evidence, but to determine whether there is evidence which sustains the board's determination of

value. The applicable rule is that expressed in *State ex rel. North Shore Development Co. v. Axtell, supra,* which provides (p. 157) : "The value placed by the assessor is presumptively correct. . . . If there is credible evidence before the board that may in any reasonable view support the assessor's valuation, that valuation must be upheld by the board."

The record indicates that the assessor employed approved standards when he evaluated appellant's title records ; that he used honest judgment and due diligence in arriving at his figure ; that the Board of Review had before it ample credible evidence to sustain the valuation ; and that jurisdictional error does not exist. For such reasons the judgment of the trial court must be affirmed.

*By the Court.*—Judgment affirmed.